## TUMLIN *vs.* PARROTT.

1. The declaration in an action brought under §1445 of the code for triple damages by reason of killing cattle in an enclosure not pro-tected by a lawful fence, is not amendable by adding a count pray-ing exemplary damages independently of that section, nor is a charge to the jury correct that recognizes their power to find on such amendment, nor is a verdict literally correct which refers to the amendment as its basis; yet the verdict, being for much less than it should have been under the original declaration and the proof applicable thereto, will not be set aside for these errors and irregularities.

2. The record of the defendant's acquittal on an indictment for kill-ing the cattle as constituting the offence of malicious mischief, though the plaintiff was the prosecutor, is not admissible in the civil action.

3. A charge of the court on irrelevant ‛and immaterial matter will not vitiate a verdict which is correct on the merits of the real con-troversy.

4. An agreement to dispense with a partition fence is not the equiva-lent of a legal fence so as to justify the killing of stock escaping by negligence of one of the parties and depredating on the premises and crops of the other. To kill stock unnecessarily without re-sponsibility for so doing, an actual lawful fence must have been broken, not merely a contract or agreement to dispense with a fence or to treat the dividing line as though it were a fence.

May 6, 1889.

Actions. Damages. Amendment. Charge of court. Verdict. Practice. Evidence. Contracts. Torts. Fences. Before Judge NEEL. City court of Carters-ville. September term, 1888.

Reported in the decision.

J. B. CONYERS and T. J. LYON, for plaintiff in error.

AKIN & HARRIS and A. S. JOHNSON. *contra*.

BLECKLEY, Chief Justice.

These parties owned adjoining farms, but had between them no dividing fence. The way was open for cattle to pass from the premises of one to those of the other. There was an agreement between the parties that a partition fence should be dispensed with, and that each should keep his cattle off of the land of the other. Parrott was engaged in the dairy business, and kept a herd of animals which he grazed upon his side of the dividing line, and they sometimes trespassed upon Tumlin, and had frequently injured his crop. Tumlin as frequently remonstrated, and repeatedly gave notice that they must be kept off. Finally, on one occasion, whilst the animals were grazing, under the care and watch of Parrott's servants, in consequence of the negligence of the servants, they escaped and again trespassed upon Tumlin's land and crops. He discovered them, and with a Winchester rifle shot and killed several of them. Thereupon Parrott brought against him an action for damages, founding it expressly on section 1445 of the code, which section is as follows: "If any trespass or damage shall be committed in any enclosure, not being protected as aforesaid, by the breaking in of any animal, the owner of such animal shall not be liable to answer for the trespass; and if the owner of the enclosure shall kill or injure such in any manner, he is liable for three times the damage." The protection here referred to is that of a lawful fence as defined or described in the three preceding sections. These sections make no provision

for an agreed or conventional fence, but contemplate an actual one.

At the trial the declartion was amended by adding a count which claimed exemplary damages, independently of section 1445 of the code. The defendant objected to the allowance of this amendment, on the ground that it introduced a new cause of action; but the objection was overruled. The evidence made out the plaintiff's case substantially as above detailed, and showed that the animals killed were of the value of $190 to $200. The jury found a verdict for $116.66, basing it expressly on the count added by amendment, the court having charged them that upon that count they could find for the plaintiff the actual damages sustained by him, if they believed the evidence authorized a recovery to that extent, and did not entitle the plaintiff to the triple damages for which the suit was originally instituted. The defendant made a motion for a new trial, which was denied.

1. We think the amendment to the declaration was improperly allowed, not because it introduced a new cause of action, but because it claimed exemplary damages other than the triple damages originally declared for, and to which the recovery in the action, if any, had to be limited. The amendment, however, did no harm; for while the jury based their verdict upon it, the recovery was much less than the plaintiff was entitled to on his original declaration. The error of the jury in founding their verdict upon the bad instead of the good part of the declaration, did the defendant no harm. As to the amount of the verdict, that was certainly not matter of complaint by the defendant, though the plaintiff might well have complained of it. A case ought not to be remanded for a new trial merely that the verdict might be made to rest on the sound instead of the

unsound part of the declaration. The truth is, the so-called second count is a mere extension and amplification of the first, in everything except the claim of exemplary damages. The error of the court in allowing the amendment, and of the jury in basing their verdict upon it, makes the justice a little ragged; but it is none the less justice, as against the defendant. It is certainly not artistic, but it has the better quality of being substantial.

2. The defendant having been indicted, tried and acquitted of the shooting, as an offence against the State, the offence charged being malicious mischief, and the plaintiff being the prosecutor, offered the record of his acquittal in evidence. The court rejected it. This was correct. *Cottingham vs. Weeks,* 54 *Ga.* 275. That the plaintiff was the prosecutor and failed to convict the defendant of the tort as a crime, would not tend to prove that the tort was not committed..

3. A part of the charge of the court was touching the subject of recoupment or set-off by the defendant of the damages which he had sustained by reason of the depredations of the animals upon his lands and crops. This matter was wholly irrelevant, as no set-off or recoupment was pleaded; but though irrelevant, we think it did the defendant no harm.

4. The great contention on the part of the defendant Tumlin, both in the court below and here, was that the agreement between the parties to dispense with a dividing fence, etc. was equivalent to having an actual lawful fence upon the dividing line. The authority relied upon for this position was the case of Winters *vs.* Jacobs, 29 Iowa, 115. This doctrine may be sound in some cases, but we think it does not apply so as to justify the destruction of live-stock that may escape by the negligence of one of the parties to the contract or

his servants, and stray upon the land of the other. The code, §1446, declares that, " when fences are made pursuant to law, and any animal breaks in, the owner of the enclosure shall not kill or injure him for the first breaking, and not until after notice is given to the owner or agent, if possible, but said last mentioned owner shall be liable for double the damage done by his stock." This is our only *killing* section; and it contemplates actual fences, and not contracts to dispense with them. According to the evidence, the shooting done in this case was wholly unnecessary. The cattle could have been expelled from the defendant's field without injuring them, as had been frequently done before. We recognize the fact that the repeated encroachments of the sort which the defendant had endured were exceedingly provoking, besides being otherwise injurious, and that upon the score of passion there was much to palliate his aggressive conduct. Nevertheless, we think he was legally liable for the amount recovered against him, and indeed for much more. The court committed no error in refusing the motion for a new trial.

Judgment affirmed.